331 So.2d 608 (1976)
Joe LEE
v.
ALLIED CHEMICAL CORPORATION et al.
No. 10662.
Court of Appeal of Louisiana, First Circuit.
April 12, 1976.
Rehearing Denied May 24, 1976.
Frank M. Coates, Jr., and A. Michael Dufilho, Baton Rouge, with him, for third party plaintiffs-appellants.
Paul H. Spaht, Baton Rouge, for plaintiff-appellee.
William C. Kaufman, III, Baton Rouge, for third party defendants-appellees.
*609 Before LANDRY, COVINGTON and PONDER, JJ.
PONDER, Judge.
Third party plaintiffs, J. S. Hadaway, W. P. Chamberlain, J. Herb Lowery, H. D. Howard, A. L. Austen, Red Roberts, John Shelton and The Travelers Indemnity Company, appeal the dismissal on a motion for summary judgment their claim for indemnity against National Maintenance Corporation and Fireman's Fund Insurance Company. National Maintenance Corporation had a contract with Allied Chemical Company, the pertinent provisions of which read as follows:
"5.01 During the performance of the work covered by this contract, [NATIONAL MAINTENANCE] shall carry the following insurance:
* * * * * *
b) (2) Comprehensive General Liability Insurance with limits of not less than $250,000 per person and $500,000 per occurrence for bodily injury, and $500,000 per occurrence for property damage, including Contractor's Protective Coverage and Blanket Contractural Coverage, including, but not limited to, the provisions of [Paragraph 9.01(b) of Article IX hereof."
"6.02 CONTRACTOR'S FEESIn addition to the payments by ALLIED CHEMICAL to CONTRACTOR set forth in paragraph 6.01 above, ALLIED CHEMICAL shall pay to CONTRACTOR for its services in the performance of the work covered by this agreement the following:
a) a fee which shall be determined as the sum of the figures arrived at by multiplying the percentages shown below by the total monthly wage and salary costs (defined in item a), paragraph 6.01 Reimbursable Direct Costs Cost of Work) falling in the corresponding wage and salary bracket(s).

Total Monthly Wages Percentage for
 and Salaries ($) Each Step (%) 
 0 - 50,000 20.5
 50,001 - 75,000 20.0
 75,001 - 100,000 19.5
100,001 - 125,000 19.0
 Over 125,000 19.0

The above fee shall include compensation to CONTRACTOR for: F.I.C.A. taxes at 4.2% rate, Louisiana State Unemployment Insurance at 2.7% rate, Federal Unemployment Insurance at 0.4% rate, CONTRACTOR'S insurance coverage as required by Article VInsurance herein, small tools of a proper kind and in sufficient numbers including power units with a new replacement cost up to and including $300 per unit (specialty tools costing less than $300 but available only from plant equipment vendors excepted), CONTRACTOR'S home office general and administrative expenses (includes salaries of CONTRACTOR'S personnel above superintendent not directly assigned to this work) and profit.
It is understood that the above fee is based on CONTRACTOR'S prevailing rates for all taxes and insurance. If any changes that are beyond CONTRACTOR'S control occur in these rates, the above percentage fees will be adjusted upward or downward, as required by the exact amount of the change(s)."

* * * * * *
"9.01 [NATIONAL MAINTENANCE] shall be responsible for and shall indemnify, exonerate and save harmless ALLIED CHEMICAL, its officers, agents and employees, from and against:

* * * * * *
b) Any and all liability, damage, loss cost, expense, claims, demands, suits, actions, judgments, or recoveries *610 for or on account of any injury to or death of persons or damage to property, including, but not by way of limitation, damage to property of [NATIONAL MAINTENANCE], ALLIED CHEMICAL or others, or injury, death of, or damage to property of ALLIED CHEMICAL or [NATIONAL MAINTENANCE]'s officers, agents, employees, servants or representatives, arising out of or in any way occurring directly or indirectly in connection with the work, including, without limitation, delegable or nondelegable duties imposed on [NATIONAL MAINTENANCE] or ALLIED CHEMICAL by law, whether or not any such injury, death, or damage may have been caused or alleged to have been caused by the negligence (whether classified as active, passive or otherwise) of ALLIED CHEMICAL, or the condition of the premises or otherwise,

And [NATIONAL MAINTENANCE] shall at its own expense defend any and all actions based thereon. Any loss, damage, cost or expense incurred by ALLIED CHEMICAL in connection with the foregoing may be deducted from [NATIONAL MAINTENANCE's] compensation them due or thereafter to become due, in addition to any other remedy that ALLIED CHEMICAL may have.

* * * * * *
"9.02 Anything to the contrary notwithstanding, CONTRACTOR'S liability under this Article IX shall not include the risks to be insured against by ALLIED CHEMICAL which are set forth in Sections 5.04 and 5.05 of Article V insofar as any loss is covered by such insurance." (emphasis added)
The plaintiff, Joe Lee, an employee of National Maintenance Company, filed suit against the above named defendants, plus Allied Chemical Corporation, Joe Rhy, and Frank Gare, the latter two supervisory employees of National Maintenance Company, alleging injury as a result of a fall caused by unsafe working conditions. The above appellants filed a third party petition against National Maintenance Corporation and Fireman's Fund Insurance Company, who in turn filed a motion for summary judgment contending that the indemnity agreement did not obligate them to indemnify and defend Allied, Travelers and the seven individual Allied employees.
The lower court denied the motion as to Allied and Travelers as the insuror of Allied, but granted the motion as to the seven individual employees of Allied and Travelers as their insuror.
It is quite plain that Section 9.01 does indemnify Allied, its officers, agents and employees from the specified liabilities. Third party defendants, however, contend that the clause of subsection (b), supra, does not include indemnity to the defendant-employees against their own negligence.
We cannot accept that position. First of all, the fair reading of plaintiff's petition is that he is complaining of "the condition of the premises."
Appellees' contention that these words cover only the strict liability imposed by C.C.Art. 667 and similar ones is certainly not without question. Such liability would devolve upon Allied alone as the owner. The agreement, however, indemnifies not only Allied but also its officers, agents and employees. To adopt appellees' position therefore would render unnecessary and senseless the enumeration of these indemnitees.
Secondly, we believe and hold that the fair import of the language used in Section 9.01 in naming the indemnitees and in using the words "occurring directly or indirectly in connection with the work, including, without limitation, delegable or nondelegable duties imposed on Contractor or Allied Chemical by law, whether or not *611 any such injury, death, or damage may have been caused by the negligence (whether classified as active, passive or otherwise) of Allied Chemical, . . ." is that it was the intention of the parties to afford indemnity to the officers, agents and employees of Allied Chemical, a corporation that can be actively negligent only through the acts of these officers, agents and employees. The words "without limitation" and "whether or not" would have little or no meaning otherwise.
We are fortified in our position that such was the intent of the parties by the provisions of Article 6.02 of the agreement that Allied Chemical was obligated to pay for the Contractor's Insurance as required by Article VInsurance.
In so interpreting Section 9.01 we are not unmindful that the general rule is that "a contract of indemnity will not be construed to indemnify the indemnitee against losses resulting to him through his own negligent acts, where such intention is not expressed in unequivocal terms." Arnold v. Stupp Corporation, 205 So.2d 797 (La. App. 1st Cir. 1967); writ not considered, 251 La. 936, 207 So.2d 540. We simply believe that each case must be determined on its own facts and that the instant indemnity agreement is unequivocal.
We believe that the import of Arnold v. Stupp Corp; supra, and those of similar holding to be that the absence of the words "negligence of the indemnitees" is evidence of the intent not to cover such negligence. However, the real question posed is that of the intent of the parties, and the intent so to cover has been found even in the absence of the magic words. See Jennings v. Ralston Purina Co., 201 So.2d 168 (La. App. 2nd Cir. 1967) and Elephant, Inc. v. Hartford Accident & Indemnity Co., 239 So.2d 692 (La.App. 1st Cir. 1970). See also Hospital Service District No. 1 v. Delta Gas, Inc., 171 So.2d 293 (La.App. 4th Cir. 1965) in which the words "without reference to negligence" were found to require indemnity against indemnitee's negligence.
For these reasons, the judgment dismissing National Maintenance Corporation and Fireman's Fund Insurance Company from the suit is reversed at the cost of the third party defendants.
REVERSED AND REMANDED.